# The United States Wind Engine and Pump Company

*v.*

## James J. Butcher.

*Opinion filed October 23, 1906—Rehearing denied Dec. 13, 1906.*

1. Evidence—*what admissible as an explanation of plaintiff's act.* Upon the question whether the plaintiff used ordinary care in putting his hand under the blade of a slat-cutting machine in a wind-mill factory to remove slats or slivers instead of going back of the machine to remove them, it is not error to admit testimony that there were certain posts back of the machine which made it difficult to remove the slats from behind, even though such testimony would not be admissible as tending to establish the cause of action.

2. Negligence—*what is not necessarily contributory negligence.* The facts that it was not necessary for the plaintiff to put his hand under the cutter-blade to remove scraps from the machine with which he was working, and that there were other safe methods of removing them, does not necessarily constitute contributory negligence barring a right of recovery, where the cutter-blade would not have dropped and inflicted the injury had the machine been in perfect order.

3. Same—*when failure to provide guard for cutter-blade is not ground for recovery.* Failure of the master to provide a guard for the cutter-blade of a slat-cutting machine to prevent his employee from voluntarily putting his hand under the blade is not ground for recovery, where the servant had worked with the machine and was familiar with its construction, thereby assuming the risk due to the absence of such guard.

4. Trial—*when question of defect in machine should go to jury.* Where the determination of the questions whether the machine with which plaintiff was working was defective, and whether the defendant knew or ought to have known of the defect, depends upon the credibility of the witnesses and the weighing of the evidence to determine the preponderance, it is proper to submit those questions to the jury.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. Charles A. Bishop, Judge, presiding.

JOHN M. RAYMOND, and JOHN K. NEWHALL, for appellant.

FRANK W. JOSLYN, and WAITE JOSLYN, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellant is a manufacturer of wind-mills at Batavia. It had a shearing machine for cutting sheet metal to make sails or paddles for the wind-mills. The machine was about seven feet long and three feet wide. The bed was twenty inches above the floor. The height of the cutter-blade above the bed was about twelve inches, and there was gearing above which made the distance from the top of the gearing to the floor about four or four and one-half feet. The machine was operated by steam power, and the cutter-blade had an up and down stroke of about two and on-half inches. This blade was hung on a revolving shaft held by a clutch, and it would not move unless the clutch was released. Sheet metal was placed on the bed under the blade, back of which were gauges to be adjusted to cut the desired shape. Back of the blade there was a lattice-work rack for holding the material after it was cut. In front of the bottom of the machine there was a treadle upon which the operator placed his foot, and pressure on the treadle released the clutch so that the blade would descend and cut the sheet of metal. The clutch was held by a spring, and when the pressure was removed from the treadle the spring would throw the clutch back again and the machine would be stopped. If the machine was in order the cutter would not work without the pressure on the treadle which released the clutch. The custom was to cut fifteen or twenty sheets of metal and then remove the pieces which had been cut, from the rack back of the blade. On June 25, 1903, appellee had been working for appellant for eight or nine years but had not worked with this machine for nearly a year. He worked with it part of the previous

day and went to work again on the morning of said day. It operated perfectly until about twenty minutes before twelve o'clock. He would put his foot on the treadle and the cutter-blade would come down and cut the metal and go up again when he would remove his foot, and that operation was repeated continuously. The clutch did not slip and the blade did not descend unless he put his foot on the treadle. At about twenty minutes before twelve he was standing in front of the machine and put his hand under the blade either to take out metal which had been cut, or waste, when the knife descended and cut off three of his fingers. He brought this suit against appellant in the circuit court of Kane county, and his declaration contained two counts. In the first he charged appellant with failing and neglecting to furnish him with safe machinery and appliances properly guarded for his safety, and in the second he charged negligence in failing to keep the machine in good and safe repair and condition and protected by guards and appliances to prevent injury. Appellant pleaded the general issue, and upon a trial there was a verdict for appellee for $2500, upon which judgment was entered. The judgment has been affirmed by the Appellate Court for the Second District.

Two questions within the jurisdiction of this court are to be determined: First, whether the circuit court erred in admitting evidence of the location of certain posts back of the machine; and second, whether the court erred in refusing to direct a verdict of not guilty.

It was not necessary for the appellee to put his hand under the blade to remove the sails or slats which had been cut, or slivers. They could be removed by going behind the machine, or by pushing them out at the side with a stick or other instrument, or pulling them out there. Appellee testified that he had used a stick or file at times to push the slats or slivers out, and that the usual and ordinary way of taking out the slats after they were cut was to go behind the machine. His excuse for putting his hand under the blade was

that it would have been more difficult to remove the slats by some other method; that it would take more time and harder work to push them out or take them out at the side, and that there was but little space behind the machine on account of posts which were set there, leaving but a narrow space and rendering that method difficult. The evidence as to the location of the posts was not admissible as proof of negligence or to establish a cause of action against appellant, both for want of any averment concerning them in the declaration and because appellee knew all about their location and assumed all risks occasioned thereby. The posts were not the cause of the injury, and the evidence was only offered, for whatever it might amount to, as an excuse for not removing the slats in a different manner. It was a question whether appellee was exercising ordinary care for his own safety, and the court did not err in admitting the testimony as an explanation why he did not go behind the machine instead of putting his hand under the blade.

The appellant asked the court to direct a verdict of not guilty, and the court refused to do so. There was no evidence in support of the charge of negligence in failing to provide a guard or protection to prevent appellee from voluntarily putting his fingers under the cutter-blade, and inasmuch as he had worked with the machine and knew all about its construction he assumed all risks, if there were any, arising from a want of a guard. The questions before the jury were whether the machine was out of order; whether appellant had, or ought to have had, knowledge that such was the case, and whether appellee was guilty of negligence in putting his hand under the cutter-blade. He had no directions to put his hand under the blade nor to remove the slats and slivers in the way he chose to use. The evidence for the appellant was, that appellee had been in the habit of putting his hands under the machine to take out slivers and waste and was warned to quit doing it or he would get hurt, but he denied that he had been so warned. There was no evi-

dence that he knew there was anything wrong with the machine, and, indeed, so far as his testimony went, it tended to prove that the defect or unsafe condition of the machine arose at the time of the accident. He had operated it a part of the day before and all of that forenoon, and it had worked perfectly. He testified that he did not have his foot on the treadle and yet the machine kept in operation, and that after the accident he observed that the spring was not strong enough to throw the clutch back and hold it in place. He had a witness who testified that he came to the witness and showed that his fingers were cut off, and the witness saw that the machine was still running and went over and put his foot on the treadle several times before he could stop it. There was evidence for appellant that on the day of the accident, and after it occurred, the machine was tried and it was found to be in good order and the treadle and clutch performed their duty perfectly. Whether the machine was out of order was a controverted question of fact. A workman testifying for appellee said that three or four months before the accident he worked on the machine and sometimes the clutch would not catch and hold, and his supposition was that the spring which threw the clutch in was weak. He said that he noticed when working on the machine, from time to time, that it refused to work right, but he knew enough to keep his hands from under the cutter, and when he did put his hands there he put in a piece of iron so that it could not catch him. He further said that it was not necessary to put the hands under the cutter, and for that reason he did no pay much attention to the imperfect working of the machine. The appellant did not have any actual notice, before the injury, of any defect in the machine, and only received such notice on the afternoon of the day of the accident, but the testimony of the witness referred to tended to prove that the machine had been out of order for some time and raised the question whether the appellant ought to have known of its condition. There were other perfectly safe

methods of removing from the machine materials which had been cut. One was to go behind the machine and another was to remove it from the side, and the operator could reach over the top of the machine and remove it in that way, but it is also true that the knife could not descend and inflict any injury if everything was in good order. While it was unnecessary for the appellee to put his hand under the cutter-blade, it could not come down and injure him if the machine was in perfect order. The evidence for appellant by several witnesses was that the machine was in perfect order, and on inspection after the accident proved to be so; that the posts did not interfere with taking out the slats at the side of the machine or over the top; that they did not prevent taking them out at the back, and that appellee had been warned not to put his hands under the blade. The determination of the questions involved depended on the credibility of the witnesses, and, whether the preponderance was on one side or the other, the court did not err in submitting the questions to the jury. Those questions, as well as the extent of appellee's injury and the amount of his damages, are questions of fact finally settled by the judgment of the Appellate Court.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Farmer and Vickers, JJ., took no part in the decision of this case.