ARTHUR CLARK, Appellee, *vs.* THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY, Appellant.

*Opinion filed December 17, 1907.*

1. APPEALS AND ERRORS—*effect of exception to denial of motion to direct verdict.* An exception to the denial of a motion to direct a verdict for the defendant does not raise in the Supreme Court the question whether the verdict is against the weight of the evidence, but it preserves for review the question whether there is any evidence fairly tending to support the plaintiff's case, and the Supreme Court will determine that question.

2. MASTER AND SERVANT—*when question whether a servant assumed risk is a question of fact.* Whether a youthful and inexperienced servant, by continuing to work with a machine one or

two days beyond the time for the repair of its defective starting device fixed by the master in his promise to make repairs, assumed the risk of injury is a question of fact for the jury, where the causes which combined to create the danger were not obvious to a man of ordinary observation and it is not shown that the servant knew the repairs had not been made. (*Gunning System* v. *La-Pointe,* 212 Ill. 274, distinguished.) .

3. SAME—*when a servant is not, as a matter of law, guilty of contributory negligence.* A servant who puts his arm under a planer bed to get a gear-wheel from a box where it was kept by the master's direction, is not, as a matter of law, guilty of contributory negligence, where the planer was idle at the time the servant put his arm in, and where such action would have been safe had not the defective mechanism of the controlling device suddenly started the planer, which crushed the servant's arm.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. M. KAVANAGH, Judge, presiding.

BENJAMIN S. CABLE, for appellant.

KRUSE & PEDEN, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellee, Arthur Clark, when sixteen years of age entered the employment of appellant as an apprentice in its machine shop. Prior to two or three months before his injury he was employed in sweeping, trucking, and occasionally running a machine or drill press for taking babbitt out of glass. Some two or three months before his injury,—the exact time is indefinite,—he was put to work at a machine called the "shoe-and-wedge planer." The power to operate the machines in appellant's plant was communicated by means of a main and counter-shafts, pulleys and belts. The planer was operated by means of pulleys and a belt connecting the shaft known as the "planer counter-shaft" with another counter-shaft which was connected

with the main shaft by means of pulleys and belt. The planer counter-shaft was equipped with two pulleys, one of which was tight upon the shafting and revolved with it. The other pulley was loose and did not revolve with the shaft. When the planer was in operation the belt was on the tight pulley, and by shifting the belt to the loose pulley the planer stopped operating. The belt was shifted by means of a piece of wood about twenty feet long hanging from the ceiling or timbers overhead, to which one end of it was fastened, and called a "shifter." Near the upper end of the shifter what is called a "fork" was attached, through which the belt ran. When the belt was on the fixed pulley the shifter would hang perpendicularly. To run the belt on the loose pulley the lower end of the shifter was pulled aside so that it hung at an angle of about fifteen degrees. To run the belt back on the fixed pulley and start the machine the shifter was pushed back to a perpendicular position. The table of the planer rests on a box or bed, and when the machine is in operation the table moves backward and forward, the motion being controlled by a foot-shifter. In the box or bed underneath the table the gear-wheel and certain tools were kept by direction of appellant's foreman. About December 24, 1901, appellee was injured. The exact date is not positively stated in the testimony, but the evidence tends to show that it was December 24, and this was considered by the Appellate Court as the correct date. Just before the injury the planer was idle. Appellee was preparing to do some work on the machine, and while it was idle reached his hand and arm into the bed or box through a space between the end of the table and bed to get the gear-wheel. As he did this, in some manner the machine was started and the table caught his arm, so crushing and mangling it that it had to be amputated just below the elbow. He brought this action to recover damages, charging in his declaration that the injury was the result of appellant's negligence in not furnishing and keeping the

machinery he was required to work with, in a reasonably safe condition.

As the errors discussed in the briefs of counsel raise no question as to the sufficiency of the declaration it is unnecessary to set it out in substance.

The case has been twice tried in the superior court of Cook county. The first trial resulted in a verdict for appellee for $12,500. This verdict was set aside and a new trial granted. The second trial resulted in a verdict for appellee for $10,000, upon which the court, after overruling a motion for new trial, rendered judgment. From that judgment defendant below prosecuted an appeal to the Appellate Court for the First District, where the judgment of the superior court was affirmed, and it has prosecuted this further appeal to this court.

At the conclusion of the plaintiff's evidence, and again at the conclusion of all the evidence, appellant moved the superior court to direct a verdict in its favor. These motions were denied and proper exceptions taken, and the only questions raised on this appeal are as to the correctness of the superior court's ruling in denying these motions.

Appellant's contention is that the superior court should have directed a verdict in its favor, first, because it must be held, as a matter of law, under the evidence, that appellee assumed the risk of being injured; and second, it must be held, as a matter of law, that appellee was guilty of contributory negligence.

Questions of assumed risk and contributory negligence are questions of fact, ordinarily. They only become questions of law where, from the facts admitted or conclusively proven, there is no reasonable chance that reasonable minds would reach different conclusions. If there is evidence fairly tending to sustain the plaintiff's case although it may be in conflict with other evidence, the trial court should not direct a verdict but should submit the case to the jury. While exceptions to the denial of the motion to direct a

verdict do not raise in this court the question whether the verdict is against the weight of the evidence, it preserves for our review the question whether there was any evidence fairly tending to support appellee's cause of action. (*Wrisley Co.* v. *Burke,* 203 Ill. 250.) This has required us to look into the evidence to determine that question.

Appellee was about eighteen years old at the time of his injury and had worked in appellant's shops in the neighborhood of a year and a half. The greater portion of the time he was not managing or operating machinery. He entered the appellant's employ as an apprentice to learn the business. The last two or three months of his employment he was operating the planer that caused his injury. During the time he was working at the planer it would occasionally start up automatically. He testified, on direct examination, it started in this way three or four times, and may be more. On cross-examination he stated it might have started as many as eight or nine times. He testified that three weeks or a month before the accident he notified appellant's foreman of the action of the machine and that the foreman walked away without saying anything. A week or ten days before he was injured he again complained to the foreman and told him the machine was dangerous. He testified the foreman told him to go back to the machine and he would make a new one for him Sunday. Another witness who was working near appellee testified he heard him tell appellant's foreman he wanted to change or have the machine fixed, and that the foreman replied: "Never mind, boy; go back; I will have a new machine for you there by Monday." Appellee continued working with the machine until Tuesday or Wednesday following, when he was injured. If the injury occurred on the 24th of December, it was Tuesday.

While, according to the evidence, appellant's foreman spoke of making or procuring a new machine for appellee to work with, it is apparent he did not mean he would pro-

vide or make a new planer, but that he would repair the
conditions that made its operation dangerous. This was the
sense in which appellee understood it, and it is treated in
this sense in appellant's brief and argument. There is no
contention that the planer itself was defective, but the de-
fects were in the machinery that operated it.

Appellant contends that if the appellee was justified in
continuing to work with the machine in reliance upon the
promise to repair, he was only justified in doing so until
the time fixed by appellant's foreman for the performance
of his promise to repair, and that when he continued to use
the machinery after that time, as a matter of law he as-
sumed the risk of injury, and great reliance is placed upon
*Gunning System* v. *LaPointe,* 212 Ill. 274. We are of
opinion there is a clear distinction between that case and
this. In the *LaPointe case* there was a promise to repair
the conditions complained of, no time being fixed in which
the repairs would be made. LaPointe worked the two days
next following the day the promise was made to repair,
then took a holiday and resumed work the fourth day un-
til after four o'clock, when he was injured. It was held
he had a right to rely upon the promise to repair and con-
tinue work, allowing a reasonable time for the repairs to
be made, but that by continuing to work for the length of
time he did he must be held to have assumed the risk and
was not entitled to recover. The conditions complained of
in that case as rendering continuing work dangerous were
of a simple character, plainly visible to any one, and could
have been easily and quickly remedied. Here the reverse
is true. The evidence tends to show that it was a combina-
tion of several causes that made the operation of the planer
dangerous. Whether in the absence of any one or more
of them the machine would have been caused to start auto-
matically, or whether the co-operation of all the conditions
described in the evidence was required to produce that ef-
fect, is by no means clear. The proof shows the shafting,

or some of it, had been moved out of alignment and some of the hangers loosened from having been struck or pushed by a crane used in handling heavy weights. To what extent these causes contributed to starting the machine or what part the belt-shifter played in producing that result is largely a matter of opinion. One of the counts of the declaration charged that the appellee did not know and appreciate the dangers and· risks incident to and connected with the running of the machine. He did know that during the two or three months he had worked with it it had started automatically possibly as many as eight or nine times. But considering his youth and experience, in connection with the complicated mechanism of the machine and methods of running and controlling it, we do not think it can be said the causes that combined to make the operation of the machine dangerous were obvious to or easily seen or known by him. Neither can it be said they were of a character that they could be easily and quickly repaired and adjusted. It was said in the *LaPointe case,* if the promise is to repair by a fixed time, a servant by continuing to work after that time assumes the risk of injury from the defects complained of. That particular question was not before the court in that case, and this observation was intended to apply only where the conditions complained of were of a similar character to those described by the evidence in that case. Undoubtedly, under the facts of that case, if the promise had been to repair within a fixed time and the party injured had continued work beyond the time fixed, he would have assumed the risk as fully as he did by working beyond the period of time which would have been a reasonable allowance for making the repairs.

Under the conditions shown by the evidence in this case we do not think it can be said, as a matter of law, appellee, by continuing to work with the machine one or two days beyond the time within which appellant's foreman promised to make the repairs, assumed the risk of injury

thereby. There is no evidence in the record that appellee knew appellant had not re-adjusted or repaired the machinery in accordance with the foreman's promise, or that he was not justified in assuming such repairs had been made. A different rule would apply if the conditions which rendered the use of the machine dangerous had been plainly apparent to the observation and understanding of an ordinarily prudent person. (4 Thompson on Negligence, sec. 4669.) It is to be borne in mind that it was by order of appellant's foreman appellee continued to work with the machine until one or two days before his injury. Whether by continuing to work beyond the time named by the foreman for making the repairs the appellee assumed the risk, was properly submitted by the trial court to the jury as a question of fact. *Graver Tank Works* v. *O'Donnell*, 191 Ill. 236.

Neither can it be said, as a matter of law, that appellee was guilty of contributory negligence. The gear-wheel he was endeavoring to get out of the planer bed at the time of his injury was kept there by direction of the appellant's foreman. To have reached his arm in and taken it out while the planer was standing idle, as it was at the time, would have been safe if the mechanical appliances for operating the planer had been in proper condition. Upon this subject this case is very similar to *United States Wind Engine Co.* v. *Butcher*, 223 Ill. 638.

We conclude, therefore, that the Appellate Court did not err in refusing to reverse the judgment on account of the denial by the trial court of appellant's motion to direct a verdict, and as this is the only error assigned here, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*