132    APPELLATE COURTS OF ILLINOIS.

Coburn v. Moline, East Moline & Watertown Ry. Co., 149 App. 132.

Matthew B. Coburn, Appellee, v. Moline, East Moline
& Watertown Railway Company et al. Appellants.

Gen. No. 5,098.

1. PASSENGER AND CARRIER—*how abrogation of rule may be shown.*
Abrogation of a rule may be shown by proof of its habitual viola-
tion with knowledge of the party establishing the rule, and such
knowledge may be constructive as well as actual; and if the prac-
tice to violate the rule is continued for such a length of time that
the maker of the rule might reasonably have known of it, the
knowledge of such maker will be presumed.

2. PASSENGER AND CARRIER—*when riding in vestibule of car will
not preclude recovery by a passenger.* Even though a carrier have
a rule forbidding passengers from riding in the vestibules of its
cars and even though notices prohibiting passengers from riding
in such vestibules be posted in such cars, yet such facts will not
preclude a recovery by the passenger for injuries sustained while
riding in such a vestibule if it appears from the evidence that such
rule was abrogated by the carrier and such notice was not seen by
the passenger.

3. PASSENGER AND CARRIER—*when relation established.* Held,
that the evidence in this case was sufficient to establish *prima
facie* the payment of fare by the plaintiff and that therefore the
relation of passenger and care was *prima facie* established.

4. PASSENGER AND CARRIER—*when question of cause of motorneer's
intoxication to be determined by jury.* Held, under the evidence
in this case, that it was a question for the jury to determine as to
whether or not a condition of intoxication existed upon the part
of the motorman and as to whether or not such condition was
caused by the passenger who was seeking to recover for injuries
sustained as the result of a collision.

5. EVIDENCE—*when opinion of medical expert not competent.*
The opinion of a physician is not competent where it is based upon
the self-serving statements by the patient not made in the course
of treatment but with reference to a trial.

6. EVIDENCE—*when motion to exclude properly denied.* If a
single motion is made to exclude the testimony of several witnesses
· it is properly denied if the testimony of one of such witnesses is
competent.

7. EVIDENCE—*how motion to exclude should be made.* A motion
to exclude should specify the particular answers or the particular
parts of answers which it is claimed are incompetent.

8. EVIDENCE—*when motion to exclude comes too late.* A motion
to exclude the testimony of a medical expert upon the ground that

it is based upon self-serving statements, should be made while such witness is upon the stand.

9. INSTRUCTIONS—*as to effect to be given to depositions.* An instruction is proper which tells the jury that they should give the same fair consideration to testimony contained in depositions as they would give to such testimony if it had been given in open court; but, *held,* in this case, that the refusal of such an instruction was not reversible error.

10. INSTRUCTIONS—*must not ignore material facts.* An instruction upon a particular branch of a cause should not ignore any of the elements which enter into its proper determination.

11. INSTRUCTIONS—*need not repeat.* An instruction correct in itself may properly be refused if its contents are contained in other instructions given.

12. APPEALS AND ERRORS—*when assignment does not raise question of excessiveness of judgment.* An assignment of error that the verdict is excessive does not raise the question of the excessiveness of the judgment if the verdict as originally rendered was required to be reduced by *remittitur.*

13. JUDGMENTS—*when not excessive. Held,* that a judgment for $6,000, rendered in an action for personal injuries, was not excessive where it appears that at the time of the second trial of the cause the plaintiff was 37 years old, that at the time of the accident he was about 32 or 33 years old, that he was by trade a blacksmith, a wagon-maker and a carpenter and had spent about 15 years at the blacksmith's trade and had been accustomed to make $3 to $4 per day at that trade; that at the time of the injury he was in the butcher business; that the evidence tended to show a partial stiffness, both in the elbow joint and in the shoulder joint, that the upper arm was shortened, the arm partly paralyzed and emaciated or wasted away, and that he had permanently lost the use of his right arm.

Action in case for personal injuries. Appeal from the Circuit Court of Rock Island county; the Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed June 10, 1909.

SEARLE & MARSHALL and CYRUS E. DIETZ, for appellants.

W. R. MOORE, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

One of the appellants owns and the other appellant

134    APPELLATE COURTS OF ILLINOIS.

Coburn v. Moline, East Moline & Watertown Ry. Co., 149 App. 132.

operates a street and interurban electric railway from a point in the city of Moline easterly and northeasterly through the village of East Moline to the village of Watertown some miles distant. Appellee and Harry Carraher, brother-in-law of appellee and his partner in business, lived in Watertown and on the evening of December 4, 1903, came to Moline over said interurban railway, and started to return on a car leaving the depot of appellants in Moline at 10 o'clock P. M. They got on at a point some distance east of the depot, where the car had stopped to await the passage of some freight cars at a steam railway crossing just ahead. Appellants' cars had enclosed vestibules in front and rear, with an open door for passengers to enter on the right hand side of the rear vestibule, and with a door for entry on the left hand side of the front vestibule, which latter door the motorneer, whose station was in the front vestibule, usually kept closed and fastened from the inside. Immediately after appellee and Carraher went upon the rear platform, the conductor of the car told them to go upon the front platform. They got off, passed around the rear of the car, and went to the left hand side of the front vestibule and got on there before the car started. No one seems to remember whether they knocked and the motorneer opened the front vestibule door or whether the door was already opened, but the motorneer testified that he usually opened that door at railroad crossings, so that after the conductor had flagged the car across he could get on the car in front if he so wished. The car started forward and the conductor got on the rear. At a certain street corner in East Moline, the street railway track turned from an east and west street to a north and south street. As this car reached and approached that turn it was running at a speed of from thirty to thirty-five miles per hour. As it struck the bend in the track, the trucks went off the track, the box of the car went off from the trucks, and slid ahead some 70 feet and turned over in the ditch. Appellee was stand-

ing on the right hand side of the motorneer in the vestibule. He was thrown underneath the box, and in some way his right arm was caught underneath the car and was broken, and was held by so heavy a weight that it was more than half an hour before he could be taken out. He was taken to a hospital and was there several weeks, and was then taken home, and his arm was treated for several months by a surgeon in the employ of the company operating the railroad. He brought this suit to recover damages for the injuries so occasioned to him. He recovered a verdict and a judgment for $5,000, which was reversed by this court in Mississippi Valley Traction Co. v. Coburn, 132 Ill. App. 624, and the cause was remanded for a new trial. At a second trial appellee had a verdict for $7,000. On motion for a new trial, the court required a *remittitur* of $1,000, which was entered, and appellee had a judgment for $6,000, from which the defendants below prosecute this appeal.

It is undisputed that the motorneer was running this car at a very dangerous rate of speed, in view of the sharp turn in the track, and that his negligence in so running the car caused this wreck and the injury to appellee. It is contended, first, that appellee cannot recover because he was riding in the front vestibule in violation of a notice forbidding him to do so, of which he had knowledge; second, that he cannot recover because his fare had not been paid and he was therefore not a passenger; third, that he cannot recover because he was a responsible party in a drunken carousal on said front platform, by means of which the motorneer became intoxicated, and because of which intoxication the motorneer failed to properly control the speed of the car as he approached this bend in the tracks; fourth, that the court erred in refusing to exclude certain medical testimony based upon subjective symptoms; fifth, that the court erred in refusing certain instructions requested by appellants; and sixth, that the judgment is excessive.

The notice is set out in 132 Ill. App. 624. It stated that no person except the dispatcher was allowed to ride on the front platform with the motorneer without a written permit. A copy of this notice was posted on the inside of the vestibule about six feet above its floor, in front of the motorneer and above his head. There were curtains hung between the inside of this car and the front vestibule which excluded the light of the car from the vestibule. There was no light in the vestibule. Appellee therefore would be much less likely to see this notice than if the vestibule had been lighted. He testified that he did not see it. Appellants proved by the conductor and the motorneer of another car that appellee had frequently ridden upon the car in their charge, and had frequently gotten into the front vestibule and had been excluded therefrom by the conductor, and that on one such occasion the conductor pointed out to him a like notice in that vestibule and read it to him, though the motorneer retracted some of his testimony after leaving the stand and reading a transcript of his testimony on the former trial. Appellee testified that he never was excluded from the vestibule by said conductor or motorneer and that such notice was never read to him. By an appropriate question and by an offer of proof appellee sought to show in rebuttal that before this accident he had several times ridden on the platform of other cars of appellants, and that his attention had never been called to this rule, and that he had never been requested to leave the platform, and that on many occasions before the accident he had seen other passengers riding on the front platform of vestibuled cars. Appellants objected to this proof and the court sustained the objection, and cross errors are assigned upon this ruling. No reason appears to us why this proof was not competent as tending to rebut appellants' claim that appellee was negligent in riding upon the front platform, and also as tending to show that the rule had been practically abandoned by the company. Abrogation of a rule may

be shown by proof of its habitual violation with knowledge of the party establishing the rule, and such knowledge may be constructive as well as actual, and if the practice to violate the rule is continued for such a length of time · that the maker of the rule might reasonably have known of it, the knowledge of such maker will be presumed. Hampton v. C. & A. R. R. Co., 236 Ill. 249; C. & W. I. R. R. Co. v. Flynn, 154 Ill. 448, and cases there cited. Appellee was not required to introduce this evidence in chief. It was properly rebuttal after appellants had shown their reliance upon the rule as a defense. It may well be that if the introduction of this testimony had been permitted it would have appeared that in actual practice appellants had treated the rule as abrogated. The conductor of the car in question testified that he was in the habit of directing passengers who had packages to go upon the front vestibule. In view of this conflicting testimony, and of the fact that appellee went into the front vestibule by express direction of appellants' conductor in charge of the car, and in view of the darkness in the vestibule and of the testimony by appellee that he did not see the rule there posted, we are of opinion that the jury were not required to find that appellee could not recover because of that rule posted in that vestibule, or otherwise known to appellee.

Appellee testified that he did not know that his fare had been paid and Carraher testified that he did not know whether he paid it or not, and our former opinion was in part based upon the proposition that his fare had not been paid. Appellee at the last trial called the conductor, who testified positively that soon after the car got beyond the railroad crossing referred to he went forward through the car and into the vestibule and called for the fares, and that Carraher then paid the fares for himself and for appellee. One of appellants' attorneys at the former trial was a witness for appellants at this trial, and it appears from his testimony that he had said conductor present to use as a

138    APPELLATE COURTS OF ILLINOIS.

Coburn v. Moline, East Moline & Watertown Ry. Co., 149 App. 132.

witness at the former trial, but learned from him that
he would testify that appellee's fare was paid, and
therefore did not put him upon the stand. The con-
ductor was discharged immediately thereafter. In
view of this positive testimony by the conductor of the
car on which this accident occurred that Carraher paid
appellee's fare soon after their journey began, and in
the absence of any positive testimony that it was not
so paid, it is impossible that this court should find that
appellee's fare was not paid and that therefore he was
not a passenger. He entered the car for the purpose
of riding from that point to his home in Watertown,
and the proof is that his fare was paid for him by his
brother-in-law immediately upon its being called for
by the conductor shortly after the journey began.

'Appellants' chief contention is that the motorneer
ran his car recklessly because he was intoxicated, and
that this intoxication was produced by Carraher, and
that appellee is responsible therefor and therefore can-
not recover. Appellee had a relative named Young
in Moline who conducted a restaurant. Appellee and
Carraher spent the evening with Young at his restau-
rant. During the evening on the invitation of Carra-
her, the three visited a neighboring saloon, where Car-
raher treated the party. Carraher drank one glass
of beer and appellee drank a glass of wine. While
there Carraher bought a pint bottle of whiskey and
put it in his pocket. Appellee testified that he did not
know that Carraher bought or had this whiskey till
after they were in the front vestibule. On cross-exam-
ination Carraher stated that either the conductor
asked him if he had whiskey or he told the conductor
that he had whiskey, before the conductor told him to
go upon the front platform. The conductor denied
that anything of that kind was said to him, and appel-
lee testified that if that was said on the rear platform
he did not hear it, and that he did not then know that
Carraher had the bottle of whiskey. When the con-
ductor called for the fares on the front platform and

Carraher paid them, Carraher then produced the bottle from his pocket and asked the conductor if he would have a drink. The conductor did take a drink from the bottle, which he claims was a single swallow. The conductor insists that that was the only drink he took that night, and that he did not see the motorneer drink anything. He also testified that when he and the motorneer started to run the car that afternoon he noticed that the motorneer had been drinking, and thought him not in a fit condition to run the car. The proof by appellants tended to show that the conductor was in the front vestibule twice afterwards before the accident, and that he took at least one other drink. There was proof tending to show that Carraher gave the motorneer two or three drinks from the bottle. Appellee testified that he did not drink anything while in that vestibule. Two passengers who were in the inside of the car testified that the curtain was at one time removed or lifted so that they could see out into the vestibule for a short time. One of them testified that he saw both of the passengers on the front platform drinking. The other testified that he saw one of the passengers drinking, but did not know whether it was the one who was afterwards injured. There was proof that the motorneer did not appear to be intoxicated and that just before the accident he was looking ahead and standing in his proper position with his hands upon the levers which controlled the operation of the car. There was other proof that just before the accident his hands were hanging by his sides and that he was looking sideways and not ahead. While appellee lay under the car some one gave him whiskey to drink, and after he was removed a medical man who attended him discovered traces of whiskey in his breath. Appellants were entitled to argue to the jury that the conductor sent these passengers to the front platform because Carraher had the bottle of whiskey and he expected to be invited to drink some of it, and that the two passengers and the conductor and the

140    APPELLATE COURTS OF ILLINOIS.

Coburn v. Moline, East Moline & Watertown Ry. Co., 149 App. 132.

motorneer were engaged in a drunken carousal, and that the failure of the motorneer to know that he was approaching a curve in the track and to reduce the speed was due to the influence of the whiskey which Carraher gave him. Appellee was entitled to argue from this evidence that he knew nothing of the presence of the whiskey till a drink was offered to the conductor in the front vestibule, and that he drank nothing and took no part in the drinking, and that he was not responsible for anything that was done there by the others. Carraher was old enough to be in business for himself. Appellee was not his father nor his guardian. We cannot say as a matter of law that appellee was responsible for Carraher's conduct. It was a question of fact for the jury to decide what conclusions should be drawn from this testimony. They have in effect decided that appellee was not responsible for the motorneer's condition, and that appellee was not negligent in remaining upon the front platform after he saw that the motorneer was drinking. We do not feel warranted in disturbing their conclusion, which has the approval of the trial judge, who could determine better than we can which witnesses were the more worthy of credit.

Dr. Dondanville, who had not treated appellee, examined him at length on the second Sunday before the last trial, and again in company with Dr. Sala on the last Sunday before the trial, for the purpose of giving testimony for him. Their evidence tended to show, among other things, a partial paralysis of the arm. Dr. Dondanville described certain tests which he made by sticking pins into the flesh of appellee's arm in various places and watching whether appellee did or did not flinch, and also by applying tubes containing hot water and other tubes containing cold water to different parts of the arm and ascertaining by his answers to questions whether appellee could tell the difference between the one and the other. To some extent Dr. Dondanville's conclusions appeared to be

founded upon these tests. No objection was made to
this testimony at the time it was introduced.  At the
close of defendant's evidence and a very brief time be-
fore the close of all the evidence, appellants made the
following motion:  "We now move to strike out all
of that or those portions of the evidence of the wit-
nesses Dr. Dondanville and Dr. Sala with reference to
their examination of this plaintiff and upon which
they predicated or based any opinions or statements
relative to his condition that is based or predicated
upon any statements made to them or either of them
by the plaintiff as to his conditions then past or pres-
ent, or his sensations or feelings consequent or inci-
dent to their examinations or the tests made by them."
That motion was denied and it is urged that the ruling
was erroneous.  The opinion of a physician is not com-
petent evidence where it is based upon self-serving
statements by the patient not made in the course of
treatment but with reference to a trial.  Fuhry v. Chi-
cago City Ry. Co., 239 Ill. 548.  But yet we conclude
that this error is not well assigned for several reasons.
First, it was but a single motion and it included the
evidence of Dr. Sala.  Dr. Sala testified that he did
not make any such tests or experiments, and a reading
of his entire evidence in the record shows that his con-
clusions were not based upon any subjective symp-
toms.  He was afterwards asked to state the nature
of tests made by pin pricking and by hot and cold
water tubes, and he did show that they involve in part
subjective symptoms, but he did not state that any
such tests were made by him or in his presence.  The
court therefore could not grant this motion as to the
evidence of Dr. Sala.  While the court would no doubt
have a right to rule separately as to the evidence of
Dr. Dondanville and the evidence of Dr. Sala, yet it
was not required to do so under this motion and it was
not error for the court to refuse the motion as made.
If appellants desired to move to exclude the evidence
of Dr. Dondanville only, and to assign error upon the

142    Appellate Courts of Illinois.

Coburn v. Moline, East Moline & Watertown Ry. Co., 149 App. 132.

refusal of the motion, they should have made that motion separately. Second, the motion did not point out any answer made by Dr. Dondanville which appellants desired to have excluded. If this motion had been granted as to Dr. Dondanville, the jury would not be able to know what particulars were excluded. The motion should have pointed out the particular answers which appellants desired to have excluded, or the particular part of an answer, as the case might be. Third, a careful reading of the evidence of Dr. Dondanville in the record makes it very doubtful whether his conclusions of the existence of partial paralysis in appellee's arm were in fact based upon subjective symptoms. Schmidt v. Chicago City Ry. Co., 239 Ill. 494. On page 196 of the record Dr. Dondanville stated that he did not determine entirely by what the patient said whether or not the pin sticking hurt him, because there was a reflex action of the skin when a pin was stuck into it which was not subject to the control of the will. On page 160 of the record he was asked the following question and gave the following answer: "Q. I understand you, doctor, to say that in your opinion he will never have the use of his arm. Now, will you state in a general way how you form that opinion, aside from what you have already stated? A. I form that opinion judging from the displacements of the bond in the region of the shoulder joint, and the amount of mobilization at the two joints, the one at the shoulder and the other at the elbow, and the amount of paralysis lasting this long a time, and the amount of—those, I believe, would be the principal reasons." Fourth, appellants examined appellee as to these tests made by Dr. Dondanville by sticking pins into his arm and by applying hot and cold water tubes, and when all of that examination on that subject is read from the record, we think it clear that appellee meant to be understood that he correctly announced to Dr. Dondanville what sensations he felt when these tests were applied. This motion to exclude was not made until

after that fact was drawn out on the cross-examination of appellee, so that before the motion to exclude was made there was in the record testimony tending to show that if Dr. Dondanville relied at all upon subjective symptoms in forming his conclusion that there was a partial paralysis of the arm, these subjective symptoms were true.  Finally, the motion to exclude should have been made while Dr. Dondanville was on the stand, so that it could then have been ascertained by further examination whether these subjective symptoms of the flinching or failure to flinch of the patient, and his answers whether the water felt cold or hot to him, were in fact the basis of the doctor's conclusion. It was very late to make this motion just at the close of the trial, when the evidence had been heard without objection.

Appellants read in evidence the depositions of Henri Beauprez, taken in Belgium, and of Leon Von Eslander, taken in Manitoba.  The court refused instruction No. 2, requested by appellants, which was to the effect that the jury should give the same fair consideration to the testimony contained in the depositions as they would give to said testimony if it had been given by witnesses in open court.  Section 34 of Chapter 51 of the Revised Statutes, relating to evidence and depositions, provides that every deposition taken and returned under the provisions of that act may be read as good and competent evidence in the cause in which it is taken, as if such witness had been present and examined by parol in open court, on the trial thereof. It was held in Olcese v. Mobile Fruit & Trading Co., 211 Ill. 539, that a similar instruction was properly given.  No reason is suggested why this instruction should have been refused.  The question remains whether its refusal was so serious an error as to require the reversal of the judgment.  The witnesses in question sat inside the car near the front end, and testified they saw drinking on the front platform and saw the motorneer drinking.  This, however, was not dis-

144    APPELLATE COURTS OF ILLINOIS.

Coburn v. Moline, East Moline & Watertown Ry. Co., 149 App. 132.

puted. Von Eslander testified that he saw one of the passengers drinking but did not know that it was the one who was afterwards injured. As there was no dispute but that Carraher did drink, that deposition added nothing to the force of appellants' other testimony. Beauprez made some statements in his deposition which the court excluded, and it is not argued that there was any error in the exclusion of those statements, which were not responsive to the questions propounded. He further testified that he saw the motorneer drinking whiskey with the two others, by which he apparently meant with the two passengers. He is the only witness who testified that appellee drank upon the front platform. If it was material to determine whether appellee did or did not drink upon the front platform—if his drinking there would defeat his recovery in this action—then we would regard the refusal of this instruction as reversible error. But under the proof appellee did not buy the whiskey or bring it upon the platform or offer it to the motorneer. There is nothing in the evidence which makes him responsible for Carraher's act in giving whiskey to the motorneer. We fail to see that the fact that he accepted a drink from the bottle when offered to him by Carraher, if the jury had found that he did so take a drink, would defeat his right to recover in this action. We therefore conclude that the testimony of Beauprez, which was mainly in harmony with the other testimony, was not of such importance to appellants that we should reverse this judgment because of the refusal of that instruction.

Complaint is made of the refusal of instructions Nos. 6, 7, 8 and 9, requested by appellants. They relate to the presence of appellee on the front platform. Nos. 6, 7 and 9 would present that subject to the jury without reference to the direction by the conductor to appellee to go upon that platform, and they were therefore erroneous. No. 8 was to the effect that though appellee went upon the platform by direction

of the conductor, yet if the appellee knew, or by the exercise of reasonable care might have known, that such direction was in violation of the rules of appellants and that such platform was not used or provided for carrying passengers, then appellee could not recover. Reliance is had upon a case where a party, having written permission to ride upon the caboose of a freight train, rode upon the engine by permission of the conductor, and it was held that the conductor could not abrogate the rules of the company. We do not think this case parallel. An engine at the head of a freight train it is well known is not intended for the carrying of passengers, and it is a dangerous place for passengers to ride upon. The vestibule of this car was easily accessible, not only by the outside door, but also by a door in the middle of the car. There is nothing in the record to indicate that it was any less safe a place for a passenger than the inside of the car, but it was less comfortable because no seats or heat were provided there. The purpose of the regulation no doubt was that the action of the motorneer in managing his car might not be hindered by passengers pressing too closely about him. In this case, a passenger inside this car was seriously injured by this accident, so that it cannot be said that if appellee had been inside the car he would not have been hurt. But further than this, the numerous instructions given by the court at the request of appellants covered this and every other point in the case, except the effect of the depositions, quite as fully as the refused instructions. For instance, the 9th instruction, given at the request of appellants, told the jury that if appellee was riding on said platform, of which he had notice, and if his so riding contributed to the accident, then he could not recover. As to other instructions offered by appellant and refused, of which complaint is made, it is also true that they were substantially embodied in the given instructions.

It is contended that the judgment is excessive. The

only assignment of error on this subject is that the verdict is excessive. The trial court so held and required a reduction of $1,000. It is not assigned for error that the judgment for the reduced amount is excessive. The point now made that the judgment is excessive seems not therefore included within the assignment of errors. Penna. Co. v. Purvis, 128 Ill. App. 367. If, however, we consider the evidence, we are not satisfied that a further reduction should be required. At the second trial in February, 1908, appellee was less than 37 years old, so that he was some 32 or 33 years old at the time of the accident. He was by trade a blacksmith, a wagonmaker, and a carpenter, and spent about fifteen years at the blacksmith's trade, and had been accustomed to make $3 to $4 per day at that trade. At the time of the injury he was in the butcher business. The evidence for appellee tended to show a partial stiffness, both in the elbow joint and in the shoulder joint, that the upper arm was shortened, the arm partly paralyzed and emaciated or wasted away, and that he had permanently lost the use of his right arm. Appellants' evidence tended to show that his injuries were much slighter. The extent of his injuries was a question of fact for the jury. If he had permanently lost the use of his right arm, then he cannot work at the trades which he has learned, and is permanently incapacitated from manual labor. We are not able to say that the judgment is more than fair compensation to a man of these trades and of appellee's age, and who had been theretofore capable of earning the wages stated. Certainly, the judgment is not so excessive that we would be justified in interfering on that ground.

We find no reversible error in the record. The judgment is therefore affirmed.

*Affirmed.*