# Frank H. Bertelsen, Appellee, v. Rock Island Plow Com= pany, Appellant.

## Gen. No. 5506.

1. MASTER AND SERVANT—*how rule may be abrogated.* Habitual violation of a rule by employes of a master will abrogate such rule if the master has, or is chargeable with, knowledge of such violation.

2. MASTER AND SERVANT—*change in means of egress.* A servant has. the right to presume that changes in the means of egress which are calculated to result in his injury will not be made without notice to him.

3. MASTER AND SERVANT—*who not fellow-servants.* One engaged in assembling parts of machinery and one handling a truck in a different part of the factory, are not fellow-servants.

Action in case for personal injuries. Appeal from the Circuit Court of Rock Island county; the HON. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the April term, 1911. Affirmed. Opinion filed October 13, 1911. Rehearing denied November 23, 1911.

SEARLE & MARSHALL, for appellant.

J. T. & S. R. KENWORTHY, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

The Rock Island Plow Company, hereinafter called the company, has a factory where it manufactures vari-ous agricultural implements. There are various rooms on different floors, in which different parts of the work are performed. It had a room called the "sulky" room. Frank H. Bertelsen worked in the sulky room, assembling parts of machinery. At the time of the injury which is the subject of this suit, he had worked there some eight months. In going to and from his work, he was accustomed to pass through a large room known as the "elevator" room. It had a small door on

the east side at the south side of the room and a larger
door about the center of the room and a door directly
west of that on the west side of the room, opening into
a larger working room, known as the "fitting room."
There was a passageway or gangway between these
two last mentioned doors, and directly south of it on
the west side of the room was an elevator shaft. Ex-
cept for the east doors this room had little or no out-
side light, but was lighted by incandescent electric
lights. The plant was accustomed to shut down from
noon to one P. M. After the whistle blew at noon, the
stationary engineer shut off the engine which operated
the dynamo and the lights gradually faded down and
went out. At or shortly after 12:45 P. M. the engine
was started again and the lights gradually came on.
During the intervening time the elevator room was
substantially dark. When Bertelsen left the room at
noon of October 12, 1907, the lights were on. When he
returned to his work after dinner, somewhere between
five and fifteen minutes before one o'clock, the place
was dark. As he went along the passageway he fell
over an iron truck or cart standing in the passageway
and was injured. He brought this suit against the
company to recover damages for said injuries, and filed
an amended declaration containing three counts. The
court instructed against the second count. The first
count charged that the company maintained a passage-
way for its employes to use as an entrance and exit to
said factory, which was dark in the day time and
usually lighted by defendant by artificial lights; that
defendant knew of its use by plaintiff and other em-
ployes as an entrance and exit from said factory, or by
reasonable care could have known of it; that defend-
ant failed to keep said passageway lighted as was its
duty and that, while plaintiff was in the exercise of due
care for his safety and using said passageway in the
line of his duty, by reason of the negligence of defend-
ant in failing to light the passageway, plaintiff fell

over a truck left in said passageway and was injured. The third count was similar, but it charged that said passageway had been habitually used by the employes of defendant in entering and departing from the factory, with full knowledge by defendant thereof and without objections by defendant thereto; that defendant negligently failed to keep said passageway lighted and negligently allowed a truck to remain in said passageway, while said passageway was dark, as defendant knew or should have known; that plaintiff did not know that said passageway was obstructed by said truck and, by reason of defendant's negligence, fell over said truck and was injured. Defendant filed a plea of not guilty; there was a jury trial and a verdict for plaintiff for $1,000. A motion by defendant for a new trial was denied, plaintiff had judgment and defendant appeals. It is assigned for error that the damages awarded are excessive, but the assignment is not argued and is therefore waived, and hence we do not need to describe plaintiff's injuries.

Appellant furnished several passageways for the entrance and exit of its employes, and the testimony it introduced tended to show that the company did not consider the way through the elevator room as a main entrance way. It introduced in evidence a rule in a book which required its employes to use the main entrances and forbid their leaving and entering by any other way. There was, however, abundant and practically uncontradicted proof not only that appellee had always used this as his place of entrance and exit during the eight months he had worked for the company, but also that many other employes regularly, and still others frequently, entered and left by this way. This room was but a short distance from the office of the company. The company is chargeable with knowledge that its employes, many of them habitually, used this route. We held in Coburn v. M. E. M. & W. Ry. Co., 149 Ill. App. 132, and Kenny v. Marquette Cement Mfg.

Co., 149 Ill. App. 173, that abrogation of a rule may be shown by proof of its habitual violation with the knowledge of the party establishing the rule; that such knowledge may be constructive, and, if the violation of the rule is continued so long that the maker might reasonably know it, his knowledge will be presumed and the rule will be treated as inoperative. The same rule was announced in affirming the Kenny case in Kenny v. Marquette Cement Mfg. Co., 243 Ill. 396. It is therefore entirely clear from the proofs that, not only did appellant fail to enforce this rule, so that it is to be treated here as void, but also that this became one of the passageways by which employes might enter and leave this factory, and it became the duty of appellant to exercise reasonable care to provide a reasonably safe passageway through this room for its employes, and the employes, so using it, had a right to presume that the master had performed that duty, and did not assume the risk that this passageway was unsafe. This conclusion makes it unncessary to discuss several of appellant's contentions.

On the north side of the elevator room returned goods were unloaded and they were stored in the north part of that room. Appellant's proof tended to show that these goods were scattered all about this room in disorder and that the passageway was often obstructed thereby. Appellee's proof tended to show that the passageway was never or seldom so obstructed. Appellant contends that when appellee came there and found the room dark he was bound to search for and avoid obstructions and also that there is no proof that appellant knew that this truck was there long enough before the injury to have it removed. When appellee went through after twelve o'clock on his way to his dinner, the room was still lighted and there was no obstruction in the passageway. The plant had shut down and was to remain shut down till one o'clock. He therefore had a right to suppose that no

change in the passageway would be made till business was resumed. There was no proof that any stranger put the truck in the passageway. We must assume that it was placed there by some servant of appellant or, in other words, by appellant itself. The person handling the truck would not be a fellow-servant of appellee. Therefore when appellant by its servant placed the truck there appellant had notice that it was placed there. The evidence tended to show that appellee was proceeding carefully through the dark passageway. These questions of fact have been decided by the jury in favor of appellee and the trial judge has approved that decision and there is nothing in the evidence which would warrant our disturbing it.

What we have said above disposes of some of the questions raised by appellant upon the instructions. The court refused Nos. 12, 13 and 14 requested by appellant. The 12th instruction, among other things made it essential to a recovery under the third count that appellee should prove that he did not know that it was dark in that room as he passed along. The third count did not charge that appellee was ignorant that the passageway was dark, and because of that element the instruction, if given, would have compelled a verdict for appellant, because it is obvious that appellee knew it was dark when he got into the room. The thirteenth instruction repeated the same proposition with reference to a recovery under the first count, while the first count contained no averment that the plaintiff did not know that the room was dark. The 14th instruction told the jury that there was no evidence that appellant knew of the obstruction of the elevator by the truck and, unless the jury believed it had been there long enough before the injury so that in the exercise of reasonable care appellant could have discovered and removed it, the jury must find for appellant under the third count. On the contrary, as already

stated, the evidence warranted the conclusion that appellant put the truck there by one of its servants. These instructions were properly refused.

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*