David A. Biggs, Appellee, v. Peoria & Pekin Union
Railway Company, Appellant.

Gen. No. 5,671.

1. EVIDENCE, § 437*—*when hypothetical question is improper.*
Where a hypothetical question as to the speed of a railway train
assumed that the front wheel of a tender left the rail at a certain
point where a mark was found on the rail, such hypothesis was
not warranted by the evidence, since it appeared that the wheel
ran for some distance on top of the rail and on the ties before the
engineer realized that the tender was derailed.

2. RAILROADS, § 587*—*what is question of fact.* .Where tracks
of a railroad were being raised several feet and the railroad com-
pany issued an order limiting the speed of trains thereon to eight
miles an hour, and the evidence as to the speed of a certain engine
was conflicting, *held,* that it was for the jury to decide whether
the engine was run at a speed which violated the order.

3. RAILROADS, § 578*—*what may be considered in determining
speed of train.* In determining the speed of an engine which was
run over tracks in the process of being raised several feet, the jury
may consider whether the instincts of self preservation would lead
an engineer to run rapidly over such tracks when his employer had
notified him not to run over eight miles an hour.

4. MASTER AND SERVANT, § 518*—*what constitutes contributory
negligence.* Where it was the duty of a foreman to ride on the
front end of a tender in order to perform his work, the jury were
warranted in finding that such act was not contributory negligence.

5. RAILROADS, § 582*—*when negligence is shown.* Where an en-
gine and tender were derailed while running over tracks which had
been raised, there being no excessive speed or obstacle upon the
track, the fact of derailment was proof that the track was not in a
reasonably safe condition at that place, and that the ballasting had
not been properly done, thus causing derailment.

6. RAILROADS, § 572*—*how cause of injury must be shown.* In
an action by a foreman who was injured by the derailment of a
tender, while riding on such tender, it was not necessary to have
a witness swear that in his opinion the derailment was caused by a
certain condition, the facts being for the jury.

7. MASTER AND SERVANT, § 786*—*when instruction does not ignore
defense.* An instruction not only requiring proof of negligence of
a defendant and of due care by plaintiff and of his injury but also
directing the evidence to be "considered under the instructions of
the court as to the law" is not erroneous as omitting the defense of
assumption of risk, when other instructions submit such defense.

*See Illinios Notes Digest, Vols. XI to XIV, same topic and section number.

8. MASTER AND SERVANT, § 337*—*what risks are not assumed by a servant.* Where a railroad company raises tracks, creating extraordinary and dangerous conditions, and issues an order whereby its servants are given to understand that a speed not exceeding eight miles an hour over such tracks is safe, a servant riding on an engine at such rate of speed assumes no risk that the track or ballast is so defective that such speed is dangerous.

9. APPEAL AND ERROR, § 864*—*what must appear in abstract.* A court of review will not search the record to find reasons for reversal not shown by the abstract.

10. APPEAL AND ERROR, § 1498*—*when exclusion of evidence is harmless.* The exclusion of evidence is harmless error where the facts are shown by other evidence.

11. DAMAGES, § 125*—*when not excessive.* Allowance of fourteen thousand two hundred and sixty dollars, where a plaintiff lost one leg and was forever incapacitated from performing the duties of foreman of a switching crew, *held,* not to warrant reversal, it appearing that such plaintiff was earning one hundred and ten dollars per month and was forty-eight years old when injured, and afterwards was able to obtain employment only at irregular intervals as flagman at a railroad crossing at nine dollars per week.

Appeal from the Circuit Court of Peoria county; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Heard in this court at the April term, 1913. Affirmed. Opinion filed August 2, 1913. *Certiorari* denied by Supreme Court (making opinion final).

STEVENS, MILLER & ELLIOTT, for appellant.

WEIL & BARTLEY, for appellee; FRANK J. QUINN, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

Appellant operates a railway across the Illinois River at Peoria and thence southeasterly for a number of miles. It is a double track road after it leaves the bridge. Appellant built a new bridge eight feet higher than the old one. It became necessary, in order to get upon the new bridge, to raise the tracks for a long distance. This railway was used by various other railways besides appellant, and one hundred trains per day passed over these tracks. The tracks were raised without stopping the operation of the

railroad. The method pursued was as follows: A quantity of material would be placed between the two tracks. One track would be raised by jackscrews a few inches for a distance of one hundred feet or more, and the material would be shoveled in underneath the ties and tamped in with shovels. Earth and gravel were used as the material until the desired height had been nearly reached and then cinders were used for the rest. The accident, which is the subject of this suit, occurred three-quarters of a mile or a mile southeast of the bridge. At that point about five feet had been filled in and about four inches were to be added, and that was to be of cinders, and cinders had been deposited between the tracks to be used in completing the work. The southwesterly was the outbound track. Appellee was foreman of a switching crew which was working with a mogul engine weighing 173 tons. There was a footboard in front of the engine and another behind the tender. The engine was headed towards Peoria but was running backwards on the outbound track. The crew consisted of the foreman, engineer, fireman and two switchmen. On October 21, 1909, appellee, the foreman, was riding on the southeast end of the footboard, which was in front as they were running. The switchmen were on the other end of the same footboard. Appellee therefore was on the inside next to the cinders which were placed between the two tracks. The tender had eight wheels under it. At the point in question all the wheels of the tender and either one or two drive wheels of the engine left the track. The footboard and the tender were driven into the cinders. The engineer reversed his engine and put on brakes and stopped as quickly as he could after he discovered that they were off the track. Appellee was found imbedded in cinders up to his neck, one of his legs was broken and it was otherwise so seriously injured that upon his removal to a hospital it was found necessary to amputate the leg, which was done. He was laid up for a long time and suffered much pain. He

brought this suit to recover damages for said injuries. The first count of the declaration charged that appellent negligently failed to provide a reasonably safe and secure roadbed and to keep the same in a reasonably safe condition, but allowed the same to be unballasted and out of repair and the tracks rough, uneven and out of alignment and misplaced, so that an engine traveling thereon was liable to be derailed, and that by reason of that negligence the engine was derailed and appellee was injured. As to the second count, a verdict for appellant was directed. The third count was similar to the first and also charged that appellant negligently permitted the board and tracks and engine and wheels to become worn, defective and out of repair. Each count charged that appellee was exercising due care, and also that these defects were known to appellant, or in the exercise of due care might have been known to appellant, and that appellee did not know thereof and, though in the exercise of due care in that behalf, had not equal means of knowledge with appellant of the same. Appellant filed a plea of not guilty and there was a jury trial. The record, certified to be complete, does not seem to contain that verdict, but a new trial was granted on motion of appellant. There was another verdict for appellee and a judgment thereon for $14,260, from which defendant below prosecutes this appeal.

Appellant prior to this accident had issued an order restricting the speed of engines and trains over the tracks so being raised to ten miles per hour and still another restricting the speed to eight miles per hour. Appellant contends that appellee as foreman had charge of the speed of this engine and that at the time of the accident it was running at twenty-five to thirty miles per hour, in violation of such order, and that it was derailed because of that excessive speed. The evidence as to the speed of the engine was conflicting. The evidence of appellee and of the engineer and of the fireman placed the speed between

five and seven miles per hour and two of them at not exceeding six miles per hour. One of the switchmen placed the speed at ten or fifteen miles per hour. He had been working on the railroad but a few months and stated that his judgment as to the speed of the engine was not very good. The other switchman was not a witness. This was all the testimony as to speed by those who had any personal knowledge of the speed of that engine at that time. Appellant called experts and put to them supposed states of fact, and they testified that this engine must have been running twenty-five or thirty miles per hour. We are of the opinion that the supposed hypothesis was not warranted by the preponderance of the evidence. After the accident a mark was found on the top of the east rail one hundred and four feet back from the place where the front wheel of the tender stopped, and the question assumed that that mark was where that wheel mounted the rail, and that at the instant that that wheel mounted the rail the engineer used all his power to stop the engine. The evidence however is that the wheel that made that mark ran some distance on top of the rail and after it went down on the outside it ran over the ties some little distance before the engineer realized that the tender was derailed and began trying to stop, and the distance which he ran, after he began using appliances to stop, was much less than the question assumed. Upon this conflicting evidence it was for the jury to decide whether the engine was run at a speed which violated the order. In determining that question they also had a right to consider whether the instincts of self preservation would lead an engineer to run rapidly over tracks in the process of being raised to such great height, when his employer had notified him not to run over eight miles per hour. The verdict is equivalent to a decision by the jury that the speed did not exceed eight miles per hour, and that conclusion was clearly warranted by the evidence.

Appellant suggests that appellee was negligent in riding upon the footboard in front as they were running. It is obvious that if he had been upon the footboard at the other end or had been upon the engine he would not have been injured. It is clear from the evidence that it was the duty of the foreman and his switchmen to ride upon the front end as they were running, and that such was the custom and the rule upon appellant's road. They were going to certain yards at Wesley for the purpose of running in upon a switch, coupling the engine to freight cars there and taking those cars to Peoria. The work was to be at that end and it was only from that end that the foreman could properly give the necessary signals to the engineer when he reached the place of work. The jury were warranted in finding that appellee was not guilty of contributory negligence in riding where he did.

By cross-examination of appellee's witnesses, and by its own witnesses, appellant introduced proof tending to show that the surface of the ground and the tracks were level at that place prior to the accident, and that the conditions appeared as usual and that the work of raising the tracks had been done in the customary manner, and it contends that if the engine was not run at an excessive speed then the cause of the derailing is not shown and the negligence charged in the declaration is not proved, and this is its main contention. The order by appellant not to exceed in speed eight miles per hour in going over these tracks is itself proof that the track was not safe to pass over, and that that fact was known to appellant. If it had been as safe as now contended, appellant would have been running engines and trains over it without any limit of speed. The fact that the wheels of the tender and one or two driving wheels were derailed is proof that it was unsafe to pass over this track at a speed of six or seven miles per hour. If the earth underneath is solid and the ties are in place and the rails are properly spiked to them and are level, and the

alignment is reasonably perfect, then the flanges of the wheels will keep the wheels upon the track, and it is impossible that they should leave the track at the speed here shown, unless some obstacle on the ground throws the wheels off, and no such obstacle was present in this case. There was proof by at least one witness for appellant that the earth underneath this track was soft. When inspected after the accident the ties had been shoved along and spikes were out. It may be that in fact the rails were not sufficiently spiked to the ties or there may have been a defect in the ties which caused them to give way. It is quite consistent with the evidence to suppose that the soil had not been equally tamped in all places and therefore gave way more at one place than another under the weight of trains passing over it. There being no excessive speed which might cause the comparatively light tender to jump the track and no obstacle upon the track to throw the tender off, we must regard the fact of the derailment as proof that the track was not in reasonably safe condition at that place and that the ballasting had not been properly done and that this caused the derailment. As the inside or easterly rail was the one over which the flanges of the wheels ran, it is reasonable to suppose that the earth under that side was not as well tamped as under the west end of the ties, and that the easterly end of the ties and the rail upon them sank down on that account and the pressing of the flange against the higher rail forced the lower wheel on the east side to the top of the rail and over the rail. We do not regard it as necessary for appellee, in order to prove his case, to have a witness swear that in his opinion the result was caused by a certain particular condition. All the known facts were shown and the jury were entitled to draw their conclusions from the facts. It is also to be remembered that appellee had no duty or opportunity to inspect these ties or rails or to know how thoroughly

the work of tamping the earth under the ties had been done.

Appellant argues that the first instruction, given at the request of appellee, ignored the defense of assumed risk and was therefore erroneous. It was to the effect that if the jury believes from the evidence, considered under the instructions of the court as to the law, that appellant was guilty of the negligence charged in some count of the declaration and thereby plaintiff was injured, and that at and before the time of the injury he exercised that care for his personal safety that a reasonably careful person would have exercised, under the existing circumstances, then they should find appellant guilty and assess the damages, etc. Each count of the declaration contained averments which negative assumed risk, and if this instruction had said that if appellee proved his case as alleged in any count of the declaration he could recover, it would have been strictly correct, under *James S. Kirk & Co. v. Jajko,* 224 Ill. 338; *Springfield Boiler Co. v. Parks,* 222 Ill. 355, and other like cases. This instruction not only required proof of the negligence of appellant and of due care by plaintiff and of his injury, to make a case, but it also directed the evidence to be "considered under the instructions of the court as to the law." Instructions were given at the request of appellant which not only stated and applied and submitted the matter of the assumption of risk by appellee, but it stated it much more strongly in favor of appellant than the law is. The question of the negligence of fellow-servants was also covered by an instruction given at the request of appellant. Moreover, if the speed did not exceed eight miles per hour as the jury have found under the instructions, then this injury was not due to any risk assumed by appellee and there was no further question of assumed risk to be submitted to the jury. No doubt, if appellee had been riding over an ordinary roadbed, he would assume the ordinary risks of his position

and employment, but appellant had created extraordinary and dangerous conditions and it had by its order authorized appellee to understand that it was safe to run over this track at a speed not exceeding eight miles per hour and appellee had a right to rely upon it, and the proof warranted the conclusion that at this particular point it was not safe to go over the track at that speed, and under such circumstances appellee assumed no risk that the track or ballast was so defective that he could not safely go over it with that speed: Moreover, said instruction No. 1, given at the request of appellee, required appellee to exercise such care for his personal safety as a reasonably prudent person would have exercised under all the existing circumstances, and if the jury had found that he was directing or permitting the speed of this engine in excess of that authorized by the order, they must have found that he was not in the exercise of due care under this instruction. When they found under this instruction that he was in the exercise of due care they must have found that which caused his injury was not the result of anything of which he had assumed the risk. We think instructions Nos. 1 and 2, requested by appellant, and refused, were sufficiently embodied in the given instructions.

Appellant contends that the court erred in not admitting in evidence a certain application by appellee to appellant, which appellant offered. The document is in fact lengthy and much of it is in fine print, and but a little of it is set out in the abstract. We must go to the record and examine the whole document before we can determine whether it was proper evidence in the case, and courts of review do not search the record to find reasons for reversal not shown by the abstract. *Phillips v. Benfield,* 249 Ill. 139. It seems that the paper provided that in case of accident to appellee, appellant should be notified within a certain time. No plea was interposed of any viola-

tion of that or of any other provision of the paper, and there was no proof that appellant was not notified, and we fail to see that the abstract shows that there is anything in this paper which would have benefited appellant if admitted in evidence. It stated that appellee knew that his employment was dangerous, but it is evident that he had that knowledge. Criticism is made upon the rulings of the court upon certain other matters of evidence. We conclude that that which was kept out by these rulings appears elsewhere in the proof and that, the whole record considered, no serious error in that respect is found.

It is argued that the damages are excessive. Appellee was forty-eight years old when injured and was earning about $110 per month. He lost one leg and is forever incapacitated from performing the duties of foreman of a switching crew. He has been able to obtain employment at irregular intervals as flagman at a railroad crossing at $9 per week. This is a difference of over $70 per month and, if he should live to the allotted span of life, the loss of wages would cover much of the verdict. He was also entitled to be reimbursed for his pain and suffering. We would have been better satisfied if the judgment had been somewhat less, but we do not feel warranted in reversing it because of the amount of the damages.

The judgment is therefore affirmed.

*Affirmed.*